**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **DANIEL MASTROLIA,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 08-5967 (PS)** |
| | : | |
| **v.** | : | |
| | : | **OPINION** |
| **JOHN E. POTTER, ET AL.,** | : | |
| | : | |
| **Defendants,** | : | |

## I. **INTRODUCTION**

This matter comes before the Court by way of Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. The motion was decided without oral argument pursuant to Fed. R. Civ. P. 78 and L. Civ. R. 78.1. For the reasons herein, Defendants' motion is granted in part and denied in part.

## II. **BACKGROUND**

The relevant facts, viewed in the light most favorable to Plaintiff, will be discussed in the analysis of the motion.

### A. Procedural History

On December 4, 2008, Daniel Mastrolia ("Mastrolia") filed a Complaint against John E. Potter, the head of the U.S. Post Office; the United States Post Office Agency; and four of his former superiors, namely: Albert Raimo ("Raimo"), Basil Pavlovsky ("Pavlovksy"), George Butler ("Butler"), and Patrick Candella ("Candella"). (Compl, Docket Entry No.1.) The

Complaint alleged claims for disability discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA") and the New Jersey Law Against Discrimination, breach of express and implied contract, breach of implied covenant of good faith and fair dealing, and violations of the Employment Retiree Income Security Act of 1974 ("ERISA") and the Consolidated Omnibus Reconciliation Act ("COBRA").  (Id.)

On June 10, 2009, Mastrolia filed an Amended Complaint alleging disability discrimination and retaliation under the ADA and § 504 of the Rehabilitation Act of 1973, and violations of a ERISA and COBRA. (Am. Compl., Docket Entry No. 31.)  On August, 14, 2009, Defendants filed their Answer.  (Ans., Docket Entry No. 35.)  On December 4, 2009, the parties consented to Magistrate Judge jurisdiction. (Docket Entry No. 40.)  The parties completed discovery and, on March 26, 2010, Defendants moved for summary judgment with respect to all of Mastrolia's claims. (Docket Entry No. 49.)  On April 7, 2010, Mastrolia withdrew all of his claims except for his claims of discrimination and retaliation under the Rehabilitation Act.  (Pl.'s Apr. 7, 2010 Letter, Docket Entry No. 54.)

## III. <u>DISCUSSION</u>

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs this motion.  Rule 56(c) provides that:

> [t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2) (2010).  Stated differently, "[s]ummary judgment may be granted only if

there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Lemaire v. Hartford Life and Acc. Ins. Co., Civ. No. 02-2533, 2003 WL 21500334, at *3 n.2 (3d Cir. June 30, 2003) (quoting Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988)).  A disputed fact is "material" only if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743–44 (3d Cir. 1996) (quoting Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)) (stating that "[f]acts that could alter the outcome are 'material' . . . .").  If the record taken as a whole in a light most favorable to the non-moving party "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation and quotation marks omitted); see also Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citing Anderson, 477 U.S. at 248) (explaining that "summary judgment is to be entered if the evidence is such that a reasonable fact finder could find only for the moving party").  If the evidence for the non-moving party is "'merely colorable or is not significantly probative,'" then summary judgment may be granted. Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 304 (3d Cir. 2004) (quoting Port Auth. of N.Y & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 232 (3d Cir. 2002)).  Thus, "[t]he question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law *or* that he did not." Anderson, 477 U.S. at 254 (emphasis in original).

Once the moving party has satisfied its burden that no genuine issue of material facts exists, the opposing party must establish that such an issue does exist. Jersey Cent. Power &

Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The opposing party "may not rely

merely on allegations or denials," Fed. R. Civ. P. 56(e)(2), but instead must present actual

evidence that creates a genuine issue as to a material fact.  Anderson, 477 U.S. at 248; accord

Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001) (stating that "[a] nonmoving

party has created a genuine issue of material facts if it have provided sufficient evidence to allow

a jury to find in its favor at trial").  In reviewing the evidence, the Court "may not make

credibility determinations or engage in any weighing of the evidence . . . ."  Marino v. Indus.

Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255.)

Through this prism, the Court will examine whether a genuine issue of material fact

exists concerning either of Mastrolia's claims under the Rehabilitation Act.  The Court will also

consider if Mastrolia may bring Rehabilitation Act claims against individual defendants who are

not the head of the agency being sued.

**B. Disability Discrimination under the Rehabilitation Act**

The Rehabilitation Act "forbids employers from discriminating against persons with

disabilities in matters of hiring, placement or advancement."  Wishkin v. Potter, 476 F.3d 180,

184 (3d Cir. 2007) (quoting Shiring v. Runyon, 90 F.3d 827, 830–31 (3d Cir. 1996)) (internal

quotations omitted).  When evaluating discrimination claims under the Rehabilitation Act, the

framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793–94 (1976),

applies.  Wishkin, 476 F.3d at 185 (finding that the purposes of preventing discrimination under

the Rehabilitation Act and Title VII are the same and that the methods and manner of proof under

McDonnell should apply to the discrimination claims under the Rehabilitation Act).

Under the McDonnell Douglas paradigm, the plaintiff has the initial burden to establish a

prima facie case of discrimination by showing that the defendant-employer took an adverse

employment action for a discriminatory reason.  Wishkin, 476 F.3d at 185 (citing McDonnell

Douglas, 411 U.S. at 802.)  The burden then shifts to the employer to "articulate some legitimate,

nondiscriminatory reason for the employment action."  Wishkin, 476 F.3d at 185 (citing

McDonnell Douglas, 411 U.S. at 802.)  If the defendant satisfies that burden, then the

presumption of discrimination[1] is rebutted and the burden shifts back to the plaintiff to show that

the defendant' reason was pretextual.  Wishkin, 476 F.3d at 185 (citing Burdine, 450 U.S. at

254–55).  A plaintiff shows that a reason is pretextual, and thereby thwarts a motion for summary

judgment, by adducing evidence that either "1) casts sufficient doubt upon each of the legitimate

reasons proffered by the defendant so that a factfinder could reasonably conclude that each

reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely

than not a motivating or determinative cause of the adverse employment action."  Fuentes v.

Perskie, 32 F.3d 759, 762 (3d Cir. 1994); accord Wishkin, 476 F.3d at 185.

Thus, the Court must first consider whether Mastrolia has established a prima facie case

of discrimination under the Rehabilitation Act.  As the Court of Appeals for the Third Circuit has

---

[1] As the Supreme Court has stated:

the prima facie case "raises an inference of discrimination only because we
presume these acts, if otherwise unexplained, are more likely than not based on
the consideration of impermissible facts."  Establishment of the prima facie case
in effect creates a presumption that the employer unlawfully discriminated against
the employee.  If the trier of fact believes the plaintiff's evidence, and if the
employer is silent in the face of the presumption, the court must enter judgment
for the plaintiff because no issue of fact remains in the case.

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981) (quoting in part Furnco
Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)).

-5-

noted, the Rehabilitation Act adopts the standards set forth in the ADA.  Wishkin, 476 F.3d at

184 (citing 29 U.S.C. § 791(g) (2007)); see also 29 U.S.C. § 794(d)(2007).[2]  Thus, cases under

the ADA apply with equal force when interpreting the standards of the Rehabilitation Act.

Mengine v. Runyon, 114 F.3d 415, 420 n.4 (3d Cir. 1997); accord Conneen v. MBNA America

Bank, N.A., 334 F.3d 318, 330 n.13 (3d Cir. 2003); Taylor v. Phoenixville School Dist., 184

F.3d 296, 312 n.5 (3d Cir. 1999);  Deane v. Pocono Medical Center, 142 F.3d 138 (3d Cir. 1998)

(en banc).

     Because the ADA standards apply to the Rehabilitation Act, the Court must consider the

impact of the ADA Amendments Act of 2008 (the "Amendments"),  Pub. L. No. 110-325, § 8,

122 Stat. 3553, 3559 (2008), that took effect on January 1, 2009 and which "expands the

definition of 'disability' under the ADA and the Rehabilitation Act."  Kania v. Potter, Civ. No.

09-1326, 2009 WL 4918013, at *5 n.5 (3d Cir. Dec. 22, 2009).  In Kania, the Court of Appeals

for the Third Circuit had "little difficulty" in concluding that the Amendments do not apply

retroactively and joined four other courts of appeals that had, at that time, reached the same

conclusion.  Kania, 2009 WL 4918013, at *5 n.5; but see Colwell v. Rite Aid Corp., Civ. No. 08-

4675, 2010 WL 1376301 at *10 n.5 (3d Cir. Apr. 8, 2010) (declining to reach a determination of

retroactivity but noting that every courts of appeals, now numbering seven, has found that the

Amendments were not retroactive).  Both parties agree that the Amendments do not apply

retroactively pursuant to Kania.  (Def.'s Br., Docket Entry No. 49, at 14 n.6; Pl.'s Resp. Br.,

---

     [2] The Court of Appeals for the Third Circuit has also noted that the Rehabilitation Act
applies to federal employers and to employers receiving federal funding whereas the ADA
applies to private employers.  Mengine, 90 F.3d at 830; see also Wishkin, 476 F.3d at 184.  Here,
there is no dispute that Mastrolia was employed by the United States Postal Service and can bring
a claim under the Rehabilitation Act.

Docket Entry No. 55, at 11.)  Consequently, the Court finds that the Amendments are not retroactive and therefore that the Court must apply the pre-Amendments statutes, regulations, and case law to Mastrolia's claims.  Kania, 2009 WL 4918013, at *5 n.5.

To make a prima facie case of discrimination under Rehabilitation Act, "a plaintiff must initially show, (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform essential functions of the job, with or without accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Wishkin, 476 F.3d at 184–85 (quoting Shiring, 90 F.3d at 831) (internal quotations omitted).

To be eligible for protection under the Act, a plaintiff must have a "disability."  The "Act defines an 'individual with a disability' as someone who (1) has a physical or mental impairment that substantially limits his/her major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment."  Wishkin, 476 F.3d at 184–85 (citing 29 U.S.C. § 705(20)(B) (2007)).  A physical or mental impairment is defined as

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

34 C.F.R. § 104.3(j)(2)(i)(2007) (definition under the Rehabilitation Act); accord 29 C.F.R. § 1630.2(h)(2007) (definition under the ADA using the same language).

Here, neither party disputes that Mastrolia's back, groin, and neck condition is an impairment.  Indeed, his condition is ostensibly classified as a "musculoskeletal" physical impairment.  See Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 782 (3d Cir. 1998)

(recognizing the nature of a back injury as an impairment and undisputed as such by both

parties).  Merely having an impairment, however, does make a person disabled within the

meaning of the ADA and Rehabilitation Act.  See Toyota Motor Mfg. Ky., Inc. v. Williams, 534

U.S. 184, 195 (2002).  Mastrolia must also show that his impairment constitutes a disability

under any one of the three definitions of disability.  For the reasons set forth herein, viewing the

facts in a light most favorable to Mastrolia, no reasonable jury could find that Mastrolia's

impairment meets any of the definitions of disability under the pre-Amendments precedent.

### i. Present Actual Disability

To satisfy the first definition of disability, Mastrolia must identify the life activity that is

limited by his impairment and prove that the limitation is substantial.  Fiscus v. Wal-Mart Stores,

Inc., 385 F.3d 378, 382 (3d Cir. 2004) (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)).

Major life activities are "those activities that are of central importance to daily life."  Toyota ,

534 U.S. at 197 (citing 42 U.S.C. § 12102(2)(A) (1994)).  Such activities include caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing learning, sitting,

standing, lifting and reaching.  Kania, 2009 WL 4918013, at *3 (citing 29 C.F.R. § 1630.2(i) and

Kralik v. Durbin, 130 F.3d 76, 78–79 (3d Cir. 1997)).  A substantial limitation has been defined

as a significant restriction on a major life activity as compared to the average person in the

general population.  Kania, 2009 WL 4918013, at *3 (citing Toyota, 534 U.S. at 195–96); see

also 29 C.F.R. § 1630.2(j) (2007).[3]  When considering whether an impairment substantially

---

[3] 29 C.F.R. § 1630.2(j)(1) states that
The term substantially limits means:
> (i) Unable to perform a major life activity that the average person in the
> general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under

limits a major life activity, courts consider the nature, severity, duration, and the permanent or long-term impact of the impairment. Mondzelewski, 162 F.3d at 783 (citing 29 C.F.R. § 1630.2(j)(2)(i)–(iii)). In particular, the impairment must be of extended or permanent duration. Toyota, 534 U.S. at 198. Under the pre-Amendment standard, the United States Supreme Court stated that "major life activities" and "substantial limitation" must be "interpreted strictly to create a demanding standard for qualifying as disabled." Toyota, 534 U.S. at 197.

Courts in the Third Circuit follow a two-step approach to determine whether an impairment substantially limits one or more major life activities. Mondzelewski, 162 F.3d at 783–84 (instructing courts to follow the two-step approach outlined by the Equal Employment Opportunity Commission's regulations); see also 29 C.F.R. § 1630.2. First, a "court determines whether the individual is substantially limited in any major life activity other than working" and "[i]f the court finds that the individual is substantially limited in any of these major life activities, the inquiry ends there." Mondzelewski 162 F.3d at 783–84. Second, "[i]f the individual is not so limited, the court's next step is to determine whether the individual is substantially limited in the major life activity of working." Id. at 784.

Under the first step, the record does not support a finding that Mastrolia's impairment substantially limits any major life activity. According to Mastrolia's interrogatory responses, he suffers from chronic pain in his back, groin, and neck that limits his ability to stand for long periods, causes insomnia and depression, and prevents him from climbing onto machines at

---

which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (2007).

work.  (Pl.'s Interrogatory Resps., Docket Entry No. 49, Ex. A, P-2, Resp. No. 8.)  According to

his deposition testimony, Mastrolia can drive for forty-five minutes without discomfort.

(Mastrolia Dep., Docket Entry No. 49, Ex. A at 106:20–107:20.)  Although Mastrolia testified

that he had problems when he went shopping or washed dishes, he also stated that he could

shovel snow on medication.  (Id. at 105:22–24, 107:21–108:8.)  Mastrolia also stated that his

limitations were embodied in Work Capacity Evaluation forms.  (Id. at 101:25–103:20.)  The

Work Capacity Evaluations dated April 20, 2005 and June 6, 2005, both state that Mastrolia: (1)

was limited to walking two hours per day, standing for three hours per day, and twisting for one

hour per day; (2) could not push or pull more than fifty pounds and could not lift more than

twenty pounds; and (3) could not squat, kneel, or climb at all.  (April 20, 2005 & June 6, 2005

Work Capacity Evaluations, Docket Entry No 49., Ex. A, P-10 & P-12.)

  Each of Mastrolia's limitations fails to pass the quantitative thresholds to be considered

"substantial" under the pre-Amendments precedent.  As to his lifting ability, Mastrolia's twenty-

pound restriction cannot be considered substantial since lower weight restrictions have been

found to be not substantially limiting.  Marinelli v. City of Erie, Pa., 216 F.3d 354, 364 (3d Cir.

2000) (holding that a ten pound lifting limitation was not substantially limiting); see also Erbe v.

Potter, Civ. No. 08-813, 2010 WL 1052947, at *7 (M.D. Pa. Mar. 22, 2010).  As to pushing and

pulling, Mastrolia offers no cases or facts showing why his fifty-pound pushing and pulling

restriction renders him substantially different from the general population.  Cf. Marinelli, 216

F.3d at 364; Jacoby v. Arkema, Inc., Civ. No. 06-2339, 2007 WL 2955593, at *8 (E.D. Pa.

2007).  Moreover, under pre-Amendment case law, the fact that Mastrolia could shovel snow,

even if only with medication, indicates that his impairments were not so severe as to meet the

"demanding standard" under the pre-Amendments precedent.  See Toyota, 534 U.S. at 197.

As to walking and standing, courts have found that restrictions comparable to Mastriola's do not constitute substantial limitations.  See Taylor v. Pathmark, 177 F.3d 180, 186 (3d Cir. 1999); Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996).  In Kelly, the plaintiff could not walk more than a mile and had difficulty walking up stairs, Kelly, 94 F.3d at 106, and in Taylor, the plaintiff could only stand or walk for fifty minutes at a time.  Taylor, 177 F.3d at 186.  In both cases, the Court of Appeals found that these were "comparatively moderate" conditions and did not constitute a substantial limitation.  Taylor, 77 F.3d at 187; Kelly, 94 F.3d at 108.  The Appellate Courts also noted that EEOC regulations define a person with a walking disability as someone who "can only walk for very brief periods of time" and that the plaintiffs in Taylor and Kelly could walk for longer periods without the use of a cane or crutches to assist them.  Taylor, 177 F.3d at 186; Kelly, 94 F.3d at 106.   Here, Mastrola can walk for up to two hours per working day, can stand for up to three hours per working day, and there is no evidence that he needs any aids in these activities or that "the difference between his ability and that of an average person is qualitatively significant enough to constitute a disability."  Taylor, 177 F.3d at 186.  The Court finds that Mastrola's standing and walking restrictions are at least commensurate to the "comparatively moderate" restrictions in Taylor and Kelly and thus are not substantial limitations.

Mastrola contends that all limitations should be viewed in their totality, but cites no case for this proposition.  Even if they were all viewed together, consideration of them in light of the activities he can perform, like shoveling snow or walking distances, demonstrate that his impairment and the limitations set forth in the work capacity evaluations do not substantially

limit his major life activities.

For all these reasons, viewing the facts in a light most favorable to Mastrolia under the governing law, Mastrolia's limitations do not substantially limit him and no reasonable jury could find that these impairments substantially limit any major life activity he has identified.

As to sleeping, courts have found sleeping to be a major life activity.  Sloan v. City of Pittsburgh, 110 Fed. Appx. 207, (3d Cir. 2004); Maslanka v. Johnson & Johnson, 305 Fed. Appx. 848, 852 (3d. Cir. 2008); see also Keyes v. Catholic Charities, Civ. No. 09-1887, 2010 WL 290513, at *6 (E.D. Pa. Jan. 20, 2010); Pokrifka v. Dollar General Corp., Civ. No. 06-1759, 2009 WL 2997024, at *6 (M.D. Pa. Sept. 14, 2009).  Assuming Mastrolia has preserved his claim of insomnia, however, he has not described how his condition impacts his ability to sleep or the difficulties it causes him.  Accordingly, his conclusory statement of insomnia is insufficient to support a finding that his impairments substantially limited his ability to sleep.  See Dicino v. Aetna U.S. Healthcare, Civ. No. 01-3206, 2003 WL 21501818, at *8 (D.N.J. June 23, 2003); Taylor v. W. Penn. Allegheny Gen. Hosp., Civ. No. 04-1564, 2005 WL 3113187, at *4–5 (D. Pa. Nov. 21, 2005); see also Pokrifka, 2009 WL 2997024, at *8 (noting that a sleeping disorder must be severe and that poor sleep patterns is a common dilemma).

As to washing dishes, although this may be a major life activity to the extent that it is necessary to live in a sanitary environment, Marinelli, 216 F.3d at 362–63, Mastrolia fails to indicate if or how his difficulties washing dishes affects his ability to live in a sanitary environment.  Thus, the Court cannot find that his problems washing dishes are onerous enough to render him substantially different from the general population.  See Marinelli, 216 F.3d at 63–64.

Mastrolia's other restrictions, namely, squatting, kneeling, climbing, twisting, shopping, and driving, do not count as major life activities. As to squatting and kneeling, only one Third Circuit case addressed whether squatting or kneeling constitute major life activities and found that they did not. Jacoby, 2007 WL 2955593, at *8, *8 n.23 (collecting cases). As to climbing, Third Circuit has not addressed this activity but the pre-Amendment standard for major life activity is a "demanding" one, Toyota, 534 U.S. at 195, and other courts have not found climbing to be the type of basic and necessary function that qualifies as a major life activity. See, e.g., Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 758 n.2 (5th Cir. 1996) (stating that "[c]limbing is not such a basic, necessary function . . . [as] to qualify as a major life activity under the ADA"); Harding v. Cianbro Corp., 436 F. Supp. 2d 153, 173–174 (D. Me. 2006) (collecting cases); Sussle v. Sirina Prot. Sys. Corp., 269 F. Supp. 2d 285, 312 (S.D.N.Y. 2003) (collecting cases); Piascyk v. City of New Haven, 64 F. Supp. 2d 19, 26 (D. Conn. 1999) (collecting cases). For similar reasons, twisting or shopping are not major life activities because they do not meet the demanding standard of a basic, necessary function and Mastrolia has not provided evidence as to the extent that these restrictions affect him in basic and necessary ways. See Toyota, 534 U.S. at 197. As to driving, the Court of Appeals has found that this is not a major life activity, see Robinson v. Lockheed Martin Corp., 212 Fed. Appx. 121, 124 (3d Cir. 2001) (citing Chenowith v. Hillsborough County, 250 F.3d 1328, 1329–30 (11th Cir. 2001) & Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998)); see also Colwell v. Rite Aid Corp., Civ. No. 08-4675, 2010 WL 1376301, at *4 (3d Cir. Apr. 8, 2010); Eshelman v. Agere Sys. Inc., 554 F.3d 426, 435 (3d Cir. 2009), and, in any event, Mastrolia has not explained how being able to drive up to forty-five minute substantially impacts a major life activity.

-13-

Finally, Mastrolia's self-described depression is not sufficiently supported by the record to support a finding of a substantial limitation.  Mastrolia provides no medical proof of depression and he has failed to describe how his depression substantially limits a major life activity.  Such an unsupported general assertion cannot constitute proof of a substantial limitation.

Consequently, Mastrolia fails the first part of the Third Circuit test because his impairments do not substantially limit any non-work major life activity.  The Court will next consider if Mastrolia's impairments constitute a substantial limitation of the major life activity of working.

Whether an impairment substantially limits an individual's ability to work depends on whether the individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i).  The United States Supreme Court has emphasized that to be disabled in the life activity of working "one must be precluded from more than one type of job, a specialized job, or a particular job of choice."  Sutton v. United Air Lines, 527 U.S. 471, 492 (1999); accord Cetera v. CSX Transp., Inc., 191 Fed. Appx. 151, 152 (3d Cir. 2006).  The Third Circuit has stated that even if an individual can perform a broad range of jobs, "one is nevertheless disabled if one is significantly restricted in one's ability to perform most of the jobs in one's geographical area that utilize training knowledge, skills and abilities similar to the job one has been disqualified from performing."  Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 763 (3d Cir. 2004)  In making this inquiry, a court should evaluate whether the particular impairment for the particular person is a significant barrier to his or her

-14-

employment.  Mondzelewski, 162 F.3d at 784 (quoting Webb v. Garelick Mfg. Co., 94 F.3d 484, 488 (8th Cir. 1996).  In other words, a court should consider how the impairment at issue affects the individual's employment prospects in light of his or her relevant personal characteristics, such as expertise, background, and job expectations.  See Mondzelewski, 162 F.3d at 784 (citing Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986)).

Under the second step, Mastrolia does not argue that he is substantially limited in the area of work except to acknowledge that he need only show an inability to work in a broad class of jobs and not a complete inability to work.  (Pl.'s Resp. Br., Docket Entry No. 55, at 12.)  Although this an accurate statement of the law, Mastrolia does not point to any evidence as to what classes of jobs he is precluded from performing.  Specifically, Mastrolia has failed to present evidence of how his training, knowledge, skills, and abilities compare to an average person; how his particular impairment is a significant barrier to his employment in his geographical area; and how his impairment affects his job prospects.  Moreover, Mastrolia's Work Capacity Forms, which his doctor completed, state that he is capable of working a full eight-hour work day.  (See Docket Entry No. 55, Exs. 7 and 9 (stating "No" in response to the question "[i]s there any reason that this person cannot WORK for 8 hours per workday?"))  In addition, to the extent the record supports a finding that he is significantly restricted in his ability to perform his specific job at the post office, which the record does not, such a finding would be nonetheless insufficient to meet the criteria of disability under the area of working because "one must be precluded from more than one type of job, a specialized job, or a particular job of choice."  Sutton, 527 U.S. at 492; accord Cetera, 191 Fed. Appx. at 152.

Consequently, the record does not support a finding that Mastrolia's impairment meets

the first definition of disability under Rehabilitation Act.  The Court will next consider whether

his impairment meets the second definition, namely, a "record of impairment."

### ii. Record of Impairment

Under the second definition of a disability, if a plaintiff does not currently have an

impairment which substantially limits a major life activity, he or she may nonetheless qualify as

disabled if that individual had an impairment that substantially limited one or more major life

activities in the past.  The Court of Appeals of the Third Circuit has explained that the "'record

of' definition was tailor-made for plaintiffs who . . . claim they once suffered from a physical or

mental impairment that substantially limited a major life activity, recovered from the impairment,

but nonetheless faced employment discrimination because of it."  Eshelman, 554 F.3d at 437

(quoting Adams v. Rice, 531 F.3d 936, 945–46 (D.C. Cir. 2008)).  However, "[a] plaintiff

attempting to prove the existence of a 'record' of disability still must demonstrate that the

recorded impairment is a 'disability' within the meaning of the ADA."  Tice v. Ctr. Area Transp.

Auth. 247 F.3d 506, 513 (3d Cir. 2001).  Moreover, assuming that the plaintiff has a "disability,"

he or she still must show that the defendant "relied upon [his or] her record of impairment in

making its employment decision."  Eshelman, 554 F.3d at 437 (citing Colwell v. Suffolk County

Police Dep't, 158 F.3d 635, 645 (2d Cir. 1998)).

Here, the record viewed in a light most favorable to the plaintiff does not support a

finding that he has a "record" of a disability because there is no assertion that he ever recovered

from his impairment.  As stated above, the purpose of this provision is to protect individuals who

are discriminated for past disabilities.  Eshelman, 554 F.3d at 437.  Moreover, under the "record

of" definition, the past impairment must have been one that substantially limits one or more

major life activity.  As stated above, Plaintiff has not shown that his impairment substantially

limits or limited a major life activity, even if he had recovered from it.  Accordingly, the record

fails to support a finding that Mastrolia's impairment is a disability under the second prong.

### iii. Regarded as being disabled

Under the third definition of disability, a plaintiff can be "regarded as having an

impairment" if he can show that he (1) had an impairment that was not substantially limiting but

his employer treated the impairment as such; (2) had an impairment that substantially limited a

major life activity due to the attitude of others towards the impairment; or (3) did not have an

impairment covered by the statute but his employer treated him as if he had a substantially

limiting impairment.  Buskirk v. Apollo Metals, 307 F.3d 160, 166–67 (3d Cir. 2002) (citing 29

C.F.R. § 1630.2(l) (2001)).  In other words, to meet this definition a plaintiff must demonstrate

that "despite having no impairment at all, the employer erroneously [believed] that the plaintiff

[had] an impairment that substantially limits major life activities; or . . . the plaintiff [had] a

nonlimiting impairment that the employer mistakenly [believed] limits major life activities."

Tice, 247 F.3d at 514 (citing Sutton, 527 U.S. at 489).  This analysis hinges on "the reactions or

perceptions of the [employer and] the persons interacting and working with him" instead of

focusing on a plaintiff's actual disabilities or limitations.  Kelly, 94 F.3d at 108–09.  For

example, an employer who has knowledge that an employee has high blood pressure and

reassigns the employee due to an "unsubstantiated fear that the employee will suffer a heart

attack" falls under the "regarded as" prong.  Deane v. Pocono Med. Center, 142 F.3d 138, 144

(3d Cir. 1998) (citing 29 C.F.R. § 1630.2(l)).

In general, cases where the employer believes that the employee cannot perform a wide

range of jobs or fill any of the employer's positions fulfills the "regarded as" prong. Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 188 (3d Cir. 1999).  For example, an employer was deemed to regard an employee as disabled when the employer believed that the employee's back injuries prevented him from any performing any available position which required "general physical activity."  Buskirk, 307 F.3d 167–68.  The "regarded as" prong is not satisfied, however, where an employer questions or tests the plaintiff's ability to perform a certain job, since the inability to perform a particular position does not fall under the statute's definition of disabled.  Tice, 247 F.3d at 515.

In the context of a summary judgment motion, a material factual issue exists where the plaintiff produces documents showing that her employer was confused as to the extent that her injury limited her abilities.  Deane, 142 F.3d at 144–45.  In Deane, the plaintiff, a nurse, had a wrist injury that prevented her from lifting objects of fifteen to twenty pounds but she presented deposition testimony that the hospital was unclear in its perception of her general pushing, pulling and lifting abilities.  Id. at 145.  The plaintiff also produced evidence that the employer fundamentally misunderstood and exaggerated the limitations the plaintiff's wrist injury and that, from its point of view, the plaintiff would have been precluded from employment in her profession and a wide range of jobs.  The Court concluded that this evidence was sufficient to conclude that employer regarded the plaintiff as disabled.  Id.

Where the plaintiff fails to produce evidence that an employer perceived the employee as being substantially limited, then summary judgment may be granted.  Stevenson v. U.S. Postal Serv., 316 Fed. Appx. 145, 148–49 (3d Cir. 2009); see also Scott v. IBM Corp., 196 F.R.D. 233, 245 (2000).  For example, in Stevenson, the plaintiff failed to produce evidence that the U.S.

Postal Service regarded her as having a substantially limiting impairment.  Stevenson, 316 Fed.

Appx. at 149.  The plaintiff had an impairment affecting her shoulder, arm, and wrist.  Id. at 146.

The plaintiff only showed that her employer knew of the impairment and failed to show that the

employer misperceived the plaintiff as having a substantial impairment in any major life activity.

Id. at 149.  The Court of Appeals for the Third Circuit held that "even if the employer knows of

an employee's impairment and denies the employee an advancement, without more the employee

is not an 'individual with a disability' under the regarded-as prong." Id.

    Here, the record shows that Mastrolia's superiors were aware he had certain limitations,

but there is no evidence that they believed Mastrolia was any more impaired than articulated in

the Work Capacity Evaluation.  Thus, the perceptions of Mastrolia's superiors, as embodied in

this record, do not support a finding that they regarded him as disabled.

    Mastrolia's supervisors, defendants Raimo, Ravlosky, Butler, and Candella,  knew that he

had limitations as to bending, lifting, walking, sitting, and kneeling that would not substantially

affect his job requirements.  (See Candella Dep., Docket Entry No. 55, Ex. 4 at 38:22–39:21;

Butler Dep., Docket Entry No. 55, Ex. 2 at 27:3–28:3, 28:22–29:5.)  Certain superiors, such as

Butler and Pavlosky, had reviewed the Work Capacity Evaluation detailing his limitations.

(Butler Dep., Docket Entry No. 55, Ex. 3 at 3:16–21, 42:18–43:11; Pavlosky Dep., Docket Entry

No. 55, Ex. 3 at 31:17–23, 34:1–25, 38:10–20; see also Raimo Dep., Docket Entry No. 55, Ex. 1

at 47:21–49:21.)  Candella accepted what Mastrolia told him about his limitations and conveyed

his requests for an ergonomic chair, his own radio, and a close parking space to his superiors.

(Candella Dep., Docket Entry No. 55, Ex. 4, at 32:10–22, 34:20–35:9, 38:15–38:21.)  Moreover,

a February 9, 2007 email from one of Mastrolia's former supervisors to Pavlosky, Butler,

Wilkinson, and Raimo stated that his restrictions were embodied in a legal settlement and that "[b]ottom line, you still need to abide by his restrictions, but this doesn't give him a free pass to do what he feels like." (Benaquista Email, Docket Entry No. 55, Ex. 8 (emphasis omitted).) Finally, Raimo stated that he saw pictures of Mastrolia carrying boxes while on leave for his injury and that he personally believed that Mastrolia was faking some of his limitations. (Raimo Dep., Docket Entry No. 55, Ex. 1 at 67:7–68:1, 70:23–24.)

Accordingly, Mastrolia's superiors perceived him to be more, or at least as, physically able as his Work Capacity Evaluations indicated, and there is nothing to indicate that his superiors thought his impairments were substantially limited a major life activity. Therefore, Mastrolia cannot be considered disabled under the "regarded as" prong.

Because Mastrolia fails to meet his burden to show that his impairments fit any of the definitions of disability, Mastrolia cannot make a prima facie case of disability discrimination as a matter of law. Thus, summary judgment in favor Defendants must be granted on this claim. The Court will next consider Mastrolia's retaliation claim.

## C. Retaliation under the Rehabilitation Act

In his second claim, Mastrolia alleges that his employer retaliated against him for conduct pertaining to his prior EEO activity and requests for accommodations pursuant to his EEO settlement. Courts analyze retaliation claims under the Rehabilitation Act under the same framework used to examine ADA and Title VII claims. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997) (applying the framework for resolving retaliation claims under Title VII to claims involving the ADA); Ozlek v. Potter, 259 Fed. Appx. 417, 421–22 (3d Cir. 2007) (applying the Krouse framework to retaliation claims under the Rehabilitation Act); see also

Pavlik v. Potter, Civ. No. 06-315, 2008 WL 4757297, at *6–9 (D.N.J. Oct. 27, 2008) (same). This framework includes the McDonnell Douglas burden shifting scheme. Pavlik, 2008 WL 4757297, at *6 (citing Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)); accord Olzek, 259 Fed. Appx. at 422.[4]

Thus, to prove a claim of retaliation under the Rehabilitation Act, a plaintiff must first establish a prima facie case. Krouse, 126 F.3d at 500; Olzek, 259 Fed. Appx. at 421–22. Specifically, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse, 126 F.3d at 500. To show that an employment action was adverse, "a plaintiff must show that . . . [the challenged action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Pavlik, 2008 WL 4757297, at *6 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)) (internal quotation omitted). To show a causal connection between the protected activity and the adverse employment action, temporal proximity between the protected activity and the adverse employment action alone is not sufficient unless the timing is "unusually suggestive." Krouse 126 F.3d at 503; see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that even "[t]he cases

_____

[4]In Gross v. FBL Finan. Servs. Inc., 129 S. Ct. 2343 (2009), the United States Supreme Court noted that it had "not definitively decided" whether the McDonnell Douglas framework applies to ADEA cases. Id. at 249 n.2. The Supreme Court, however, has applied this framework to ADA claims, see Raytheon v. Hernandez, 540 U.S. 44, 49–50 (2003), and the Third Circuit has continued to apply this framework to Rehabilitation Act claims. See, e.g., Kriebel v. Atty Gen. of U.S., Civ. No. 09-1154, 2010 WL 1293373 (3d Cir. Apr. 6, 2010); Flory v. Pinnacle Health Hospitals, 346 Fed. Appx. 872 (3d Cir. 2009); Simon v. Potter, 328 Fed. Appx. 143 (3d Cir. June 24, 2009).

that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'") (citations omitted).  Where such close timing does not exist, "courts may look to the intervening period for other evidence of retaliatory animus."  Krouse, 126 F.3d at 503–04.

Second, if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its adverse employment action. Id. at 500.  At this stage, the employer's burden is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." Id. (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997)).

Third, where the employer advances a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to produce sufficient evidence to raise a genuine issue of fact as to "whether the employer's proffered explanation was a pretext for retaliation."  Krouse, 126 F.3d at 501.  A plaintiff meets this burden "by demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."  Id. at 504; see also Pavlik, 2008 WL 4757297, at *7 (citing Fuentes, 32 F.3d at 764 (citation and quotation omitted)).

Accordingly, an employer can obtain summary judgment if it can "show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's [decision-making] process and (2) that it had a determinative effect on the outcome

-22-

of that process." Krouse, 126 F.3d at 501.  The "employer may accomplish this by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case, or (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation."  Id.

Here, Defendants do not dispute that Mastrolia engaged in protected employee activity or was subjected to an adverse employment action.  Indeed, Mastrolia's EEO Complaints and attempts to receive accommodations pursuant to his EEO settlement would be considered protected activity.  See, e.g., Pavlik, 2008 WL 4757297, at *7.  Moreover, termination would dissuade a reasonable worker from making a charge of discrimination, and for this reason, the Court of Appeals for the Third Circuit has found that termination is one of a number of "discrete" adverse employment actions.  See Caprio v. Peters, 345 Fed. Appx. 824, 827 (3d Cir. 2009) (noting that "discrete" adverse actions include "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, and wrongful accusation").

Accordingly, the Court will address whether there is an issue of material fact as to the existence of a causal connection between the protected activity and the adverse employment action.  If there is, then a prima facie case exists, and then the Court will next consider whether Defendants have proffered a legitimate non-discriminatory reason.  Finally, the Court will analyze whether Mastrolia has produced evidence showing that a reasonable factfinder could find Defendants' proffered legitimate non-discriminatory reason to be "unworthy of credence."  See Krouse, 126 F.3d at 504.

### i. Causal Nexus

Defendants argue that no causal nexus exists between Mastrolia's EEO activity and his termination because the supervisor who recommended Mastrolia's termination, Butler, had no knowledge of Mastrolia's EEO activity when he made his recommendation.  Defendants support this assertion with a Declaration by Butler and a Modified Assignment Worksheet.  The Court finds a dispute concerning a genuine issue of material fact exists as to a causal nexus because the record, viewed in a light most favorable to Mastrolia, undercuts Butler's Declaration and demonstrates sufficient evidence from which a jury may find that animus existed during the intervening period between Mastrolia's actions and the recommendation for termination to withstand summary judgment.

In his Declaration, Butler stated that he was unaware of Mastrolia's prior EEO activity when he recommended Mastrolia's termination.  (Butler Decl., Docket Entry No. 49, ¶ 9)  Butler also completed a form, dated February 24, 2007, to provide Mastrolia with an accommodated work schedule in which he checked a box indicating that the he was "not sure" if the assignment was based on a prior settlement.  (Butler Decl., Feb. 24, 2007 Worksheet, Docket Entry No. 49, Ex. A.)  At his deposition, however, Butler stated that, several months after becoming Mastriola's supervisor in November 2006, he heard that some sort of proceeding resulted in a settlement regarding Mastriola's restrictions.  (Butler Dep., Docket Entry No. 55, Ex.2 at 40:1–41:10; see also Butler Dep., Ex.2 at 40:15–19 ("Q: Have you heard of this agreement before today? A: I heard there was some sort of arbitration in that Danny [Mastrolia] had restrictions that had to be allowed, and I had no problem with it.").)  Butler also received an email, dated February 9, 2007, from one of Mastrolia's former supervisor that explicitly stated that

Mastrolia's restrictions were part of a settlement involving the post office.  (Benaquista email, Docket Entry No. 55, Ex. 8.)  Butler's recommendation to terminate Mastrolia occurred sometime after a February, 22, 2007 interview with him, and Mastrolia received the Notice of Removal on March 9, 2007.  (Notice of Removal, Docket Entry No. 55, Ex. 11.)  Accordingly, there appears to be inconsistency between Butler's Declaration and other evidence as to what Butler said about what he knew about Mastrolia's prior EEO activity and when he learned about it.  Construing all inferences in favor of Mastrolia and leaving credibility determinations up to the jury, the Court cannot grant summary judgment on the issue of a causal nexus because there is a disputed fact as to when Butler learned facts about the EEO activity and a reasonable jury could find that Butler was aware of the EEO settlement when he recommended Mastrolia's termination.

Besides the inconsistency of Butler's statements, other evidence could be viewed as showing a causal nexus between Mastrolia's protected activities and his termination.  Within a few weeks, three events occurred: (1) all of Mastrolia's superiors were aware or became aware of Mastrolia's specific restrictions and prior settlement with the post office, (2) a former supervisor believed that Mastrolia might attempt to exploit these restrictions, and (3) current superiors took steps to terminate Mastrolia.

As stated above, Mastrolia settled a prior EEO complaint in October 2006, and only Mastrolia's former supervisor, Benaquista, knew its exact terms as he was present when the agreement was reached.  (See Oct. 18, 2006 Settlement Agreement, Docket Entry No. 55, Ex. 6.) At unspecified points in time, Mastrolia, presumably relying on the agreement, asked for or maintained his right to certain accommodations, namely: time off in the break room when his

-25-

back hurt, an assigned parking spot closer to the building, a radio to minimize his walking, and an ergonomic chair.  Beginning in November 2006, Mastrolia's breaks became a point of contention.  In November 2006, Supervisor Candella wrote Mastrolia up for disciplinary action for taking an improper break, and Mastrolia responded by filing an EEO complaint.  (Candella Dep., Docket Entry No. 55, Ex. 4 at 26:18–20.)

As a result of the break room controversy and differing views about Mastrolia's required accommodations, Mastrolia's former supervisor, Benaquista, sent an email dated February 9, 2007, to Mastrolia's current superiors, including Butler, Pavlosky, Raimo, and Wilkinson. (Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 51:12–24; Benaquista Email, Docket Entry No. 55, Ex. 8.)  The email made an explicit distinction between what "Mastrolia claims [Benaquista] agreed to" and the agreed upon terms of the settlement.  (Benaquista Email, Docket Entry No. 55, Ex. 8.)  The email stated that "[a]dhering to [Mastrolia's] restrictions is the ONLY agreement that [Benaquista] was in concurrence with."  (Id.)  Moreover, the email indicated that Mastrolia's restrictions were attached.  (Id.)  Finally, the email stated "[b]ottom line, you still need to abide by his restrictions, but this doesn't give him a free pass to do what he feels like."  (Id.)  On the same day as the email, Mastrolia was injured when a machine cover fell on his finger.  (Notice of Removal, Docket Entry No. 55, Ex. 11.)  On February 12, 2007, Mastrolia attempted to call in a break due to back problems from a community phone and an altercation with another employee ensued.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 101:1–102:20.)

On February 20, 2007, one of Mastrolia's supervisors, Wilkinson, yelled at Mastrolia for being in the break room.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 102:21-103:5; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 120:16–25.)  Neither Butler nor his superior, Pavlosky,

-26-

further investigated the incident.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 103:25–106:10; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 122:15–123:18.)  Rather, on February 22, 2007, Butler conducted a Pre-Disciplinary Interview ("PDI") regarding Mastrolia's accident history. (Notice of Removal, Docket Entry No. 55, Ex. 11.)  After that, Butler conferred principally with Pavlosky about terminating Mastrolia.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 117:17–22.) Butler only had the power to recommend termination (Butler Dep., Docket Entry No. 55, Ex. 2 at 18:24–19:6), and Pavlosky could concur or overrule such a recommendation.   (Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 26:21–27:4.)  This is particularly relevant because even if Butler knew nothing of Mastrolia's EEO activity, Pavlosky, who had the authority to terminate, knew of Mastrolia's EEO activity (see, e.g., id. at 41:24–42:7).

A reasonable factfinder could find that this confluence of events within a few weeks establishes a link between Mastrolia's EEO activity, which gave him the agreed to restrictions, and his termination.  First, Mastrolia's accommodations and restrictions became an issue for all of Mastrolia's superiors that resulted in Benaquista's February 9, 2007 email.  Second, Mastrolia's superiors became aware, some perhaps for the first time, of his settlement and agreed to restrictions.  Third, Mastrolia became injured and became involved in multiple incidents with others arguably having some connection to his accommodations.  Fourth, Mastrolia's superiors terminated him during this same time span.  The temporal proximity of these events and their connection to Mastrolia's accommodations create a plausible narrative chronicling an employee's EEO issues coming to a head, the employee acting to exercise his rights under a prior settlement, and superiors terminating the employee.  Therefore, the Court cannot grant summary judgment for the lack of a causal connection.

Moreover, as discussed below, the record cannot sustain summary judgment because Mastrolia has adduced sufficient evidence to present an issue of fact concerning whether Defendants' legitimate non-discriminatory reason for Mastrolia's termination is pretextual.

**ii. Legitimate Non-Discriminatory Reason**

When a plaintiff establishes a prima facie case of retaliation, the Court next considers whether Defendants have articulated a legitimate, non-retaliatory reason for its adverse employment action.  As stated above, this is a light burden which is "is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." Krouse, 126 F.3d at 500. Here, Defendants stated that they terminated Mastrolia for "Failure To Perform [his] Work in a Safe Manner."  (Notice of Removal, Docket Entry No. 55, Ex. 11.)  Accordingly, Defendants have met their burden because an inability to work safely is a legitimate non-retaliatory reason to fire an employee as unsafe conduct poses a risk to harm both the employee and his coworkers. Now, the Court must consider whether any evidence, viewed in the light most favorable to the plaintiff, sufficiently shows that there is an issue of fact as to whether or not this reason was merely a pretext.

**iii. Prextext**

Mastrolia can show that a genuine issue of fact exists as to whether the employer's legitimate, non-retaliatory reason is true "by demonstrating weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Krouse, 126 F.3d at 504 (quotation omitted).  Mastrolia has met this burden.

Butler and Pavlosky stated that the possibility that Mastrolia might injure himself or someone else was the only reason for terminating him.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 60:15–21; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 126:22–25; see also Raimo Dep., Docket Entry No 55, Ex. 1 at 106:5–16.)  As set forth below, the basis for the determination primarily centered on either Mastrolia's attitude or his high frequency of injury.

Butler stated that he was especially concerned about Mastrolia's attitude, which Butler stated showed an unwillingness to work safely.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 54:18–57:9.)  In particular, Butler asserted that Mastrolia's unsafe attitude was demonstrated when Mastrolia insisted there was nothing he could have done to have prevented his injuries and that the post office was at fault for those injuries.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 60:3–7.)  Although Mastriola's attitude was purportedly unjustified, neither Butler, Pavlosky or Candella was aware of any instance where Mastrolia injured anyone else, put anyone in danger, acted improperly, or was disciplined.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 100:14–23, 83:14–25; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 95:9–99:6, 101:16–109:15, 116:9–15; Candella Dep., Docket Entry No. 55, Ex. 4 at 82:3–10.)  Moreover, there is no evidence that Mastrolia was warned about his safety problem or that his actions might result in termination, and Butler did not mention this concern during the PDI that occurred before Mastrolia's termination.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 57:6–15, 80:11–20; Raimo Dep., Docket Entry No 55, Ex. 1 at 109:23–110:3; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 99:17–101:15.)

Mastrolia's high rate of injury was also a basis for his termination.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 93:6–15; Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 92:7–93:21.)  Both

Butler and Pavlosky testified that they reviewed a list of injuries before the termination was

recommended and finalized.[5]  (Butler Dep., Docket Entry No. 55, Ex. 2 at 53:25–54:8; Pavlosky

Dep., Docket Entry No. 55, Ex. 3 at 113:3–12.)  Based on this list, Butler told a Union

representative that Mastrolia keeps getting injured no matter what the post office did for him.

(Butler Dep., Docket Entry No. 55,  Ex. 2 at 122:23–123:3.)  An examination of the list,

however, shows Mastrolia's record of injuries includes an incident in which he was allegedly

assaulted (id. at 84:1–87:11), job-related stress from being harassed by the person who assaulted

him  (id. at 88:1–89:9), and a bug bite (Notice of Removal, Docket Entry No. 55, Ex. 11).

Mastrolia's record also includes a cut on his hand from a plastic tie wrap, which is an injury

similar to those that many postal workers, including Butler, had suffered.  (Butler Dep., Docket

Entry No. 55, Ex. 2 at 90:8–23.)  Mastrolia's other injuries included: a back strain injury on

February 6, 2006; pain to his groin and back on May 26, 2005; a sprained back and groin on

November 12, 2004; an injured right thumb on July 29, 2004; job-related stress on March 13,

2003; Rib contusions on October 13, 2000; and a left-shoulder injury on June 5, 1999.  (Notice of

Removal, Docket Entry No. 55, Ex. 11.)  Mastrolia was never disciplined or found blameworthy

for wrongdoing for any of his accidents, including the last accident before to his PDI, when a

machine cover fell on his finger.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 83:14–25,

100:7–9.)  This last injury, which occurred on February 9, 2007, a month before his notice of

removal, was the only accident that occurred while Butler was Mastrolia's supervisor, but even

on this occasion, Butler did not discipline Mastrolia specifically for that incident in any way.  (Id.

_____

[5] The post office has a mandatory reporting policy for injuries, no matter what the level of
gradation or severity.  (Butler Dep., Docket Entry No. 55, Ex. 2 at 90:21–92:8.)

at 100:7–9.)  A reasonable juror may look at these episodes and conclude that they do not show

Mastrolia was an employee who worked in an unsafe manner that warranted termination but

rather that he was terminated for some other reason.  Such conclusion aligns with testimony that

no manager or supervisor was personally aware of anyone else being terminated for suffering too

many injuries or failing to act safely and that Raimo, over his many years with the postal service,

had heard second hand of only one other person who was terminated for too many injuries

(Butler Dep., Docket Entry No. 55, Ex. 2 at 83:11–25, 100:7–9, 117:6–16; Pavlosky Dep.,

Docket Entry No. 55, Ex. 3 at 97:18–21, 132:23–133:9; Candella Dep., Docket Entry No. 55, Ex.

4 at 81:23–82:2; Raimo Dep., Docket Entry No. 55, Ex. 1 at 96:5–101:22).  It is also consistent

with Candella's view that Mastrolia did not have too many injuries.  (Candella Dep., Docket

Entry No. 55, Ex. 4 at 83:18–22.)  Thus, a reasonable fact finder could determine that the

assertion that Mastrolia was terminated for a high accident rate was inconsistent with Mastrolia's

record, the post office's policy of requiring an employee to report all injuries no mater how

small, the judgment of at least one of his former supervisors, and the prior practices of the post

office, and therefore conclude that the safety-related reason given for termination was pretextual.

Moreover, although the termination decision allegedly had nothing to do with Mastrolia's

performance (Raimo Dep., Docket Entry No 55, Ex. 1 at 106:5–16; Pavlosky Dep., Docket Entry

No. 55, Ex. 3 at 126:11–21), opinions of Mastrolia's performance were less than stellar and some

included criticism based on his impairment.  Raimo stated that Mastrolia's supervisors implied

that he was not very good at his job.  (Raimo Dep., Docket Entry No. 55, Ex. 1 at 105:6–8.)

Butler stated that Mastrolia was an "alright" worker who performed his job, but not well.  (Butler

Dep., Docket Entry No. 55, Ex. 2 at 52:11–14.)  Candella thought he was a good worker except

for his limitations.  (Candella Dep., Docket Entry No. 55, Ex. 4 at 83:23–84:3.)  Pavlosky stated

that:

> I have a limited amount of people to perform the assignment that Tour 3 does.  An injured employee is difficult to work with accomplishing the ultimate goal of processing the mail as expeditiously as possible.  That is the only problem I have.  I need to be able to interchange employees, and his limitations hampered me a little bit.

(Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 131:5–11.)  From this evidence, a reasonable

factfinder could conclude that the termination decision was not based on safety concerns, but

rather was because of the impact of Mastrolia's limitations in the workplace and his efforts to

seek accommodations to which he believed he was entitled under his EEO settlement.[6]

Consequently, the record viewed in a light most favorable to Mastrolia shows that he has

presented a prima facie case of retaliation and has sufficiently undercut Defendants' proffered

legitimate non-retaliatory reason to make summary judgment inappropriate.  Because Mastrolia's

retaliation claim can proceed, the Court will consider whether he can maintain a claim under the

Rehabilitation Act against his individual supervisors and managers.

### D. Individual Claims under the Rehabilitation Act

Mastrolia argues that his claims against Raimo, Pavlosky, Butler, and Candella are

permissible under the Rehabilitation Act, but he provides no cases to support this proposition.

---

[6]Plaintiff has also presented some evidence that Mastrolia's employers may have treated him differently than a similarly situated worker.  Mastrolia argues that he asked to work as a technical service dispatcher in the master control room.  His superiors denied this request despite the fact that, on a prior occasion, an injured maintenance mechanic was allowed to work in the master control room to dispatch service calls.  (Pavlosky Dep., Docket Entry No. 55, Ex. 3 at 88:1–15.)  Although differential treatment can be a form of retaliation, see Pavlik, 2008 WL 4757297, at *9, the record does not sufficiently indicate the timing of Mastrolia's request, whether the other employee engaged in protected activity, and, if he did not, whether this demonstrates that Mastrolia was treated differently only because he engaged in protected activity.  See Krouse, 126 F.3d at 504.

While the Court of Appeals for the Third Circuit has not decided whether Rehabilitation Act claims may be properly filed against employees other than the agency head, other Circuits have held that the only proper defendant under the Rehabilitation Act is the head of the agency.  See, e.g., Hiler v. Brown, 177 F.3d 542, 546–47 (6th Cir. 1999); Hamm v. Runyon, 51 F.3d 721, 722 n.1 (7th Cir. 1995);  Johnson v. USPS, 861 F.2d 1475, 1477–78 (10th Cir. 1989);  Pritchard v. S. Co. Servs., 102 F.3d 1118, 1119 n.7 (11th Cir. 1996).  Moreover, district courts in this circuit have found that employees other than the agency head are improper defendants under the Rehabilitation Act.  See Riley v. Potter, Civ. No. 08-5167, 2010 WL 125841, at *4 n.3 (D.N.J. Jan. 7, 2010); Capobianco v. Geithner, Civ. No. 09-1656, 2009 WL 2370443, at *1 n.3 (E.D. Pa. July 28, 2009) (citing Hamm, 51 F.3d at 722).  Following the analysis of these cases, the Court concludes that the individual defendants are improper defendants as a matter of law.  Therefore, the Court grants summary judgment as to the remaining claim against Raimo, Pavlosky, Butler and Candella.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' motion for summary judgment as to Mastrolia's claim of disability discrimination under the Rehabilitation Act and grants summary judgment as to all claims against Raimo, Pavlosky, Butler, and Candella.  The Court denies Defendants' motion for summary judgment as to Mastrolia's claim of retaliation under the Rehabilitation Act.  An Order consistent with this Opinion was issued on April 22, 2010.[7]

---

[7] As stated in the Order dated April 22, 2010, "[t]he Court . . . issued this Order before delivering the Opinion to enable counsel to focus their efforts in connection with the jury instructions, neutral statement, verdict sheet, and final pretrial order on the only claim proceeding to trial."

**s/ Patty Shwartz**
**United States Magistrate Judge**

DATED: April 27, 2010